**In re RANDELL.***
**Patent Appeal No. 3172.**

Court of Customs and Patent Appeals.
Dec. 30, 1933.

*Rehearing denied February 12, 1934.

Ralph R. Randell, pro se.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

The application, certain claims of which are here at issue, is entitled "Improvements in Dams and Other Structures Subject to Fluid Pressure."

In the form as finally acted upon by the Examiner of the United States Patent Office, there seem to have been thirty-five claims, although the three drawings required only three numerals to designate the alleged inventive features. The Examiner allowed eleven claims and rejected the other twenty-four. Upon appeal the Board of Appeals reversed the Examiner as to three of these twenty-four, affirming as to the other twenty-one, and the appeal was taken to this court as to those so finally rejected by the Board, being Nos. 30–39, 44–46, 52–54, 59, and 62–65, respectively. There are no method claims involved in the appeal; all of them being for the dam itself as a structure.

Claims 30, 39, 52, and 59 are regarded by us as fairly representative:

"30. In a dam, the combination of a relatively impervious face, a supporting structure, and a porous layer drain located between and bonded to said face and said structure."

"39. In a dam, the combination of a relatively impervious face, a supporting structure, and an open layer drain between said face and said structure; the downstream face

of said drain being provided with a porous lining."

"52. In combination with a dam, a porous layer drain located approximately between the foundation and the body thereof and adhesively bonded to the adjacent materials; said drain being adapted to function without hydrostatic pressure materially in excess of that necessary to raise the drainage, substantially without frictional loss of head, to an elevation at the downstream face of the dam sufficient to permit it to flow away therefrom by gravity."

"59. In combination with a dam, an open layer drain approximately between the foundation and the body thereof."

The references, as stated in the brief of the Solicitor for the Patent Office, are: Richardson, 373,946, November 29, 1887; Hall, 923,831, June 8, 1909; Terzaghi, 1,499,956, July 1, 1924.

There was another reference below, but it applied to two of the claims rejected by the Examiner, but allowed by the Board, and is no longer involved in the case.

In addition, claims 52, 53, and 54 were rejected on allowed claim 51, which we also quote:

"51. In combination with a dam, a porous layer drain located approximately between the foundation and the body thereof and adhesively bonded to the adjacent materials."

The description of the structures as given in the claims themselves is quite full, but, for additional clarity, we quote from the decision of the Board as follows:

"The invention is a dam. It consists of a main supporting structure 2 which applicant states may be made of stone, earth, crushed rock, plain or reinforced concrete, or cement. An impervious face 1 is provided on the upstream side, which may be made of wood, cement, concrete, steel, or steel embedded in an asphaltic or other water-proof material. Between the supporting structure and the impervious face and the foundation is placed a drain layer. Applicant states that this layer may be open, cellular, or relatively porous. It may consist of porous concrete, porous stone, other porous masonry, sand, gravel, crushed rock, concrete or other grillage or cells, air space or other suitable material or arrangement. The drain layer will drain any water passing through the face or through the supporting structure."

By comparing claim 52, supra, with allowed claim 51, supra, it is obvious that No. 52 contains nothing not contained in No. 51, except a statement as to function. No structural differences are discernable. This is true of claims Nos. 53 and 54 also. There was no error in the Board's holding that "The inclusion of functional statements is insufficient to distinguish the claims." By the allowance of claim No. 51 appellant is given all that he would obtain if the others of this class were granted and the inclusion of those others in the application was unnecessary. In re Einstein, 46 F.(2d) 373, 18 C. C. P. A. 885.

It is proper to say that appellant, who acted as his own counsel in preparing his brief and in presenting the case before us, in a supplemental statement filed before the hearing, goes so far as to concede "reasonable room for differences of opinion" as to "claims 52, 53, and 54." It is our opinion that they were properly rejected.

Claim 59, supra, was held to be broad enough to read on Terzaghi. The specification of the Terzaghi patent recites:

"This invention relates to means which will prevent the hollowing out or washing away of buildings, retaining walls, weirs and the like by that part of the backwater which leaks or trickles through the foundation. The characteristic feature of the invention consists in arranging either at the bottom of the building or weir facing the air or underneath the foundation of the building or the like a filter of such a character, that it will permit the free outflow of the underground-water but prevent the passing through of constituents or parts of the soil, and whereby the filter is loaded or weighted in such a manner, that the layers located underneath the filter and through which the leakage water flows cannot be driven upwardly."

Appellant grounds his argument as to this claim upon the assertion that it "specifies an open drain." The expression in the claim itself, however, is "an open *layer* drain." (Italics ours.)

The drawings of the Terzaghi patent disclose and the specification, in terms, describes "a layer f permeable to water" located at the bottom end of the outside, or of the "side facing the air," of the weir. It is true, as stated by appellant, that the patent does not use the word "drain," and it is true also that there are structural differences in the respective devices, but claim 59 itself does not express such structural differences. It is broad in its terms. The layer "permeable to water" of Terzaghi manifestly serves as a drain, permitting, as it does, "the free outflow of the underground-water." The mere name without some indication of structural difference,

by which the feature is designated, is not of importance in this case.

There was no error in the rejection of claim No. 59 on Terzaghi.

All the other claims were rejected on Hall; Richardson being cited upon a particular feature hereinafter to be considered.

Hall's patent is for a dam, as a structure, and discloses a main supporting structure, made of relatively permeable material, such as loose rock, or rock or earth fill, having, at its upstream side, a lining made with spacer cement, or concrete walls *spaced apart by spreaders* at frequent intervals, so as to withstand collapsing of the lining. The spaces between the concrete walls are sufficient to permit the passage of a person therethrough. Any water which finds its way through the walls drains to the bottom and is carried away by drain pipes.

As we view the matter, the only difference in structure between the dam of Hall and that of appellant, necessary to be taken into consideration here (except as to claim 39 hereinafter considered), is that appellant's lining structure, instead of having walls spaced apart, thus forming a hollow interior construction, is, as expressed in various of the appealed claims, for example in claim 30, supra, "a porous layer drain located between and bonded to" the impervious face and the supporting structure of the dam.

Upon this point the Board of Appeals says:

" * * * We are unable to see any material distinction in the construction recited and that shown by Hall. The spreaders would not materially interfere with the drainage so as to not make it substantially uniform. The spreaders are naturally made strong enough so that the hollow construction will not collapse. Water can drain through it from the supporting structure. The inner wall would be bonded to the main supporting structure in an equally efficient manner as in applicant's construction. The impervious face portion is made with a hollow interior so that a man may enter and inspect it for defects. It is obvious if it be not desirable to inspect it the hollow portion may be filled up with sand or porous material as in the Richardson construction."

We feel constrained to differ with the tribunals of the Patent Office as to the equivalency in a patentable sense of the described lining features of Hall and appellant. It seems to us that the differences in the respective structures as specifically described are suffi-

cient to justify the finding of a patentable difference, unless it be true, as the Board holds, that the teaching of Richardson may properly be combined with Hall to negative invention.

The Richardson patent is entitled "Means for protecting the walls of buildings or other structures." The drawings disclose a house whose undersurface walls—that is, the walls of the underground basement—are protected from moisture and dampness by a plan which the specification describes as consisting of "constructing a trench around the usual wall or foundation of a building on the outside thereof, cementing the outside of the foundation-wall, and filling the trench with a porous mixture of sand and cement or of broken stone. * * * "

In other words, Richardson teaches the cementing of the outside of a basement wall so as to make it water-tight or impervious to moisture coming against same from the outside, the making of a trench along the outside of the wall thus cemented, and filling the trench with a porous mixture into which moisture seeping through from inside the wall finds its way, and, passing through the porous mixture, is eventually carried off through a drain pipe or gutter running out through the soil "to a cesspool, sewer, or similar drain. * * * " Richardson states that his porous mixture is "preferably from two (2) to six (6) inches in thickness." Nothing is said of this porous mixture being bonded to the matter adjacent it.

The specification of Richardson names primarily the protection of "walls of buildings," but adds "or other walls and structures, or so much of them as is located *beneath the surface of the earth.*" (Italics ours.)

It is quite obvious, we think, that Richardson had no thought of applying his wall-protecting device or plan to dam construction, nor do the tribunals of the Patent Office so hold or intimate. As we understand it, that patent was cited simply to show the use of a porous mixture, arranged as described, for draining moisture from walls.

We are of the opinion that, when the particular structure of Richardson and the application made of it by him are considered, it should be held that Richardson may not properly be combined with Hall to negative invention on the part of appellant as to this feature.

It follows that, so far as the references are concerned, we are of the opinion that ap-

pellant is entitled to protection upon the feature of a porous layer drain located between and bonded to the relatively impervious face and supporting structure of his dam.

This feature, as related to his entire construction, appears to be expressed in claims 30, 31, 35, 37, and 63 and those claims are allowed.

It is possible that this feature may be already covered by allowed claim 51, supra, but, since those herein allowed were not rejected upon claim 51, but upon references that we think not applicable, it seems proper for this court to consider them only upon such references.

As to claim 39, supra, a somewhat similar technical situation exists. It is among those rejected upon Hall. Appellant points out, however, that claim 39 distinguishes from Hall in the same respect that claim 41, which the Board allowed, distinguished therefrom; that is, with reference to the porous lining on the downstream face of the drain, a feature which Hall does not disclose. This appears to be true.

It further appears that, in allowing claim 41, the Board of Appeals pointed out that it is similar, in the respect mentioned, to claim 40 which the Examiner allowed, and so the Board allowed 41 also. But, while so allowing 41, it rejected 39, not upon 40 and 41, but upon a reference which the Board itself, in allowing 41, must have held inapplicable to the particular feature at issue.

Had the Board rejected claim 39, supra, upon claims 40 and 41, a different situation would confront us, but the rejection being based solely upon a reference which we think not applicable, it seems proper for the court to follow the action of the Board as to claim 41 and hold claim 39 allowable also.

The decision of the Board of Appeals is reversed as to claims 30, 31, 35, 37, 39, and 63 and affirmed as to all others.